EARLEY v. LAW.

1. MARRIED WOMEN—JUDGMENT—MORTGAGE.—It being conceded that the alleged debtor was a married woman when she executed a note, which was reduced to judgment and included with another note in a mortgage afterwards executed, and the married woman having denied the validity of these debts, and the creditor having offered no evidence to show that they did concern the woman's separate estate, both judgment and mortgage were properly held to be invalid.

2. FINDINGS OF FACT by the Circuit Judge from testimony taken by a referee, and reported to the court in writing, approved.

3. VOLUNTEER—EXCEPTIONS raised by a party to the cause to portions of the decree that can, in no event, affect his interests, will not be considered, he being as to such matters a volunteer.

Before IZLAR, J., Abbeville, January, 1893.

This was an action by Annie L. Earley, J. C. Caldwell, C. L. Caldwell, and Isabella G. Caldwell against Charles C. Law, J. P. Phillips, survivor, J. M. Godbold, and C. F. Godbold, commenced February 28, 1891. The testimony was taken by a referee and reported to the court. The Circuit decree was as follows:

It appears that on the fourth day of October, 1838, a marriage contract was entered into between John C. Gibson and Martha A. McCall, in which one A. L. Scarborough was named trustee. John C. Gibson died in 1846, A. L. Scarborough, trustee, died in 1853, and one Asa Godbold was substituted in his stead and place; Asa Godbold, trustee, died in 1869, and Martha Gibson died on the 17th day of June, 1870. The only issue of said marriage was Desdemona S. Gibson, who intermarried with Charles C. Law, the defendant, about the 15th day of January, 1857.

There was also a marriage contract entered into between the said Desdemona S. Gibson and Charles C. Law, in which one W. H. Godbold was named as trustee; W. H. Godbold died in 1869. From 1869 to April, 1873, there was no regular trustee under this last mentioned marriage settlement, and the defendant, Charles C. Law, assumed the duties of such trustee, and acted as such in all matters pertaining to the said trust estate.

In April, 1873, the defendant, Charles F. Godbold, was appointed trustee in the place and stead of W. H. Godbold, deceased, and is now such trustee.   On the 13th day of January, 1871, the defendant, Charles C. Law, qualified as administrator of the personal estate of Mrs. Martha A. Gibson, deceased; Desdemona S. Law died on the 29th day of December, 1887, intestate, leaving surviving her her husband, the defendant, Charles C. Law, and two children, Annie Law Early and Mary D. Caldwell.   The said Mary D. Caldwell, originally a party plaintiff herein, died since the commencement of the action, intestate, leaving surviving her her husband, J. C. Caldwell, and two infant children, Charles L. Caldwell and Isabella Gibson Caldwell, as her only heirs at law and distributees. By an order of this court, the heirs at law and distributees of the said Mary D. Caldwell, deceased, were made parties plaintiff in this action.

By the terms of the marriage settlement between John C. Gibson and Martha A. McCall, the trustee, during the joint lives of the parties, was to receive the rents and profits of the real and personal estate, and pay the same over to the joint use of the parties, or suffer the parties to have the joint use of the estate, and to receive the rents and profits thereof, without infringing upon the capital; and after the death of the said John C. Gibson, his wife surviving, to stand seized and possessed of the estate for the use of the said Martha A. Gibson during her life, and after her death, then to the use of the children of the said marriage; and if the said Martha A. Gibson should leave no children living at her death, then to the right heirs of the said Martha A. in fee.   The trustee was empowered to collect all choses in action, moneys, &c., and invest the same in real estate and negroes, according to his discretion, by and with the assent of the said Martha A. Gibson, expressed in writing, and stand seized and possessed of the property so purchased, in trust for the same uses, interests, and purposes.

The marriage settlement entered into between Charles C. Law and Desdemona S. Gibson included the property mentioned in the marriage settlement between John C. Gibson and Martha

A. McCall, which at the death of the said Martha A., would vest absolutely in the said Desdemona S. Gibson.

By the terms of the marriage settlement between Charles C. Law and Desdemona S. Gibson, the trustee therein named was to have and to hold the property mentioned in "Schedule B," thereto attached, to and for the sole use of the said Desdemona S., for and during her natural life, free from the contracts, liabilities, alienations, and control of her husband, Charles C. Law, and, after her death, to and for the issue of said marriage, then living, to be equally divided among and between them; and in further trust to allow the said Desdemona S. during her life and at her pleasure either to possess and use the said property and the increase thereof, or to account and pay over to her the annual increase of the same; and that her receipt therefor, notwithstanding her coverture, should be a complete and valid discharge. And upon the further trust that the trustee should, upon the request in writing of the said Charles C. Law and wife, or the survivor of them, sell and convey the whole or any part of said trust property, or the increase of the same, and invest the proceeds in such other property, consisting of land, slaves, or necessary household furniture, as the said parties, or the survivor of them, should in writing direct, provided that the said Charles C. Law should not have any right to direct a sale of the trust property, should he survive his wife, and at her death there should be no issue.

There are other provisions in said settlements which, under the facts as they exist, have little or no bearing upon the issues involved. I have, therefore, only extracted such portions as I deem important to the present inquiry.

On the 4th day of August, 1873, Charles C. Law entered into an agreement in writing with one D. Wyatt Aiken, for the purchase of the Stoney Point plantation. Several payments on account of the purchase price of said plantation were made by the defendant, Charles C. Law. On the 11th day of March, 1879, a conveyance to said plantation was executed by one W. Joel Smith, trustee, to the said Desdemona S. Law. The consideration expressed in this conveyance is $5,000. Afterwards, to wit: on the 11th day of August, 1879, the said Desdemona S.

Law conveyed seventy-seven acres of the Stoney Point plantation to her daughter, Mary D. Caldwell. By this deed it is provided that the seventy-seven acres are to be taken by the said Mary D. Caldwell as part of her share in the estate of her mother—the value to be accounted for in the distribution of said estate. The Stoney Point plantation now contains 180 acres, more or less.

On the 16th day of October, 1879, the said Desdemona S. Law signed and delivered to the said Charles C. Law, her husband, an instrument in writing of which the following is a copy:

"Abbeville Co., S. C., 10th April, 1879.—This certifies that I am indebted to Charles C. Law in the full and just sum of $3,500—being money advanced by him to me for the purchase of Stoney Point plantation (exclusive of the amount of land given by me to my daughter, M. D. Caldwell). This obligation of indebtedness is not to bear interest during our joint lives, but is intended to constitute a first class mortgage on said premises in favor of said C. C. Law or his assigns, in the event of my decease during his life. In witness whereof, I have signed, sealed, and delivered this obligation to him as of the day and year expressed. 16th October. 1879. Desdemona S. Law (L. S.) In presence of C. V. Law."

Afterwards, to wit: on the 8th day of July, 1884, the said Desdemona S. Law, to secure the payment of a certain promissory note for the sum of $760, made by her to Phillips & Jackson, and bearing date the 1st day of July, 1884, executed to the said Phillips & Jackson a mortgage of the Stoney Point plantation, then containing 185 acres, more or less, which mortgage was duly recorded in the office of the register of mesne conveyance for said county, on the day of its execution.

Since the death of the said Desdemona S. Law, the defendant, Charles C. Law, has been in the possession of Stoney Point plantation, and has received the rents and profits derived therefrom. The evidence tends to show that the rental value of said plantation is about $200 per year.

A number of questions arise in the cause. The following, however, are the questions upon which the rights of the parties chiefly stand and upon which the result mainly depends: (1)

How much, if any, of the moneys belonging to the trust estate of Desdemona S. Law was used in the purchase of Stoney Point plantation? (2) Is the paper executed by Desdemona S. Law to the defendant, Charles C. Law, a good equitable mortgage, having lien upon the said plantation? And, if so, from what time, for what amount, and to what extent? (3) Is the mortgage executed to Phillips & Jackson by Desdemona S. Law a valid mortgage on said plantation? And (4) is the defendant, Charles C. Law, liable for the rents and profits derived from said plantation since the death of Desdemona S. Law? And, if so, for what sum? I will consider these questions in the order in which they are stated.

There can be no doubt, I think, but that Stoney Point plantation was purchased by Desdemona S. Law. It is true, that the agreement to purchase was entered into between Charles C. Law and D. Wyatt Aiken, but that Desdemona S. Law afterwards took the place of Charles C. Law, is fully shown by the evidence in the cause. The paper introduced by the defendant, Charles C. Law, as a mortgage on said plantation, recites that the debt intended to be secured thereby was money advanced by Charles C. Law to Desdemona S. Law for the purchase of Stoney Point plantation, and the conveyance was made to her by W. J. Smith, trustee. This being the case, I shall treat Stoney Point plantation as the property of Desdemona S. Law. The purchase price of this plantation is stated in the conveyance as being $5,000. I have carefully read and studied the testimony, and the conclusion reached is that $1,875 of the purchase price of Stoney Point plantation was paid out of moneys belonging to the trust estate of Desdemona S. Law, and the remainder thereof, $3,125, was advanced by the defendant, Charles C. Law, out of his own funds.

It is admitted by Charles C. Law that $1,200 of the moneys of the trust estate entered this purchase. He only claims that he advanced $3,500. This would leave a deficit of $300 of the purchase price of the plantation unaccounted for, and he does not undertake to show where this sum came from. As he had in his hands at the time moneys belonging to the trust estate, the presumption is conclusive, that that sum was paid out of

the trust funds in his hands. Again, the $375 paid to W. Joel Smith was certainly moneys belonging to the trust estate. He attempts, it is true, to show how this money became his money. The explanation is not satisfactory. The mere declaration that he advanced large sums of money to the trust estate, and reimbursed himself with this $375, is not enough to change the character of the fund. He does not show how and for what purposes these large expenditures by him on account of the trust estate were made. This he should have done. Without it, the court cannot say whether or not the expenditures were authorized and lawful.

Now as to the paper executed by Desdemona S. Law to her husband, to secure the amount advanced by him on account of the purchase money of Stoney Point plantation. I am clear this paper is a good equitable mortgage, and, as such, may be enforced between the parties. The rights of third parties, however, cannot be affected thereby. Papers of this kind, informal though they be, have been so frequently held to be good equitable mortgages, that it would be a waste of time and space to review and discuss the authorities. It seems to me that this paper must be regarded as a mortgage on Stoney Point plantation, as described in the complaint, in favor of the defendant, Charles C. Law, to secure the payment of $3,125, with interest from the 29th day of December, 1887, its lien dating from the 16th day of October, 1879, the day of its execution and delivery.

The next question is that in relation to the Phillips & Jackson mortgage. There is no question as to the execution and delivery of the note and mortgage by Desdemona S. Law. There is, however, no testimony in regard to the consideration of this note and mortgage. The only witness examined with reference to these papers was J. P. Phillips, the survivor of the late firm of Phillips & Jackson. All he says is: "All the credits are on the papers. I had no knowledge at the time I took these papers of any trust affecting the property. The mortgage includes the judgment that is set up in the complaint, and represents all that Mrs. Law owes me. It was given for full value." At the time these papers were executed by Desdemona S. Law, she was a married woman. This being so, the

burden of proof was on the defendant, J. P. Phillips, survivor, to show that the contract was made by the said Desdemona S. Law with reference to, and for the benefit of, her separate estate. In other words, to show affirmatively that the debt which the mortgage was given to secure arose out of a contract which the said Desdemona S. Law, then a married woman, was competent to make. This he has not done. Having, therefore, failed to establish this fact by proof, he fails to establish any liability against the said Desdemona S. Law, or her separate estate. *Taylor* v. *Barker*, 30 S. C., 242; *Chambers* v. *Bookman*, 32 *Id.*, 455.

The last question stated is in relation to rents and profits. It appears that the defendant, Charles C. Law, has been in the exclusive use and occupation of Stoney Point plantation since the death of his late wife, Desdemona S. Law, and has received the rents derived therefrom during this period. The rule of law applicable to this question is, I think, well settled, and it is not necessary that I should cite authorities to support it. In the present case, there has been no ouster by the defendant, Charles C. Law; hence, if liable at all, he is only liable for the rents received and the profits made, upon so much of the tillable lands as he rented and cultivated in excess of his share. The testimony in relation to rents and profits is vague and unsatisfactory. One witness testifies that there is about one hundred acres of open land; and two testify that the rental value of the tract is from two hundred to two hundred and fifty dollars per annum. How much of the open land has been used and rented by the defendant, Charles C. Law, each year since the death of his wife does appear. He testifies that he received some rents, but no profits, from the plantation. That the average rent received for the last two years was one thousand pounds of lint cotton. I find no testimony as to the price of cotton during these years. If I should fix a price, it would be purely speculative, even if there were no further difficulties connected with this question. I regard the testimony too slight and indefinite to support an intelligent and accurate finding. This conclusion renders it unnecessary to determine what portion of the rents and profits, if any, should go to the trust estate—by no means an easy question.

It is, therefore, ordered, adjudged, and decreed, &c.

*Messrs. S. C. Cason* and *L. W. Perrin,* for appellant.

*Messrs. Woods & Spain* and *Parker & McGowan,* contra.

September 21, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. The facts underlying this controversy are sufficiently stated in the Circuit decree, which, to that extent, must appear in the report of this case. Two of the defendants, Charles C. Law and J. P. Phillips, as survivors of Phillips & Jackson, have appealed from the decree of his honor, Judge Izlar, filed on 6th day of May, 1893, on the following grounds, to wit: 1. Because his honor erred in holding that $1,875 of the trust money, under the marriage contracts set out in the complaint, was invested in the Stoney Point plantation; whereas he should have held that only $1,200 was so invested, or, at most, $1,575. 2. Because he erred in holding that only $3,125, with interest, was due on the mortgage given by Mrs. Law to C. C. Law. 3. Because he erred in not holding that the children of Mary D. Caldwell should account to the estate of Mrs. Law for the value of the seventy-seven acres, being a part of Stoney Point conveyed to her by Mrs. Law in 1879; or if not to account in that way, then that the value should be charged to them as so much upon what may be due them of the trust estate; and if more than is due them, then to account for the balance. 4. Because he erred in directing one-half of $1,875, and interest, to be paid to the children of Mary D. Caldwell; whereas he should have ordered such portion as they may be entitled to, to be held until the land conveyed to their mother by Mrs. Law should be accounted for. 5. Because he erred in not holding that the seventy-seven acres conveyed to Mrs. Caldwell by Mrs. Law, being a part of the Stoney Point plantation, were liable for their *pro rata* share of the trust funds which were paid upon the purchase of the Stoney Point. 6. Because he erred in crediting to the trust estate $300, which he states is necessary to make up the purchase price of Stoney Point, to wit: $5,000; whereas the $3,500 advanced by Mrs. Law, and the $1,575 of the trust money, would make in all

22—42

$5,375. . 7. Because he erred in allowing interest on the amount of trust funds found by him to be invested in Stoney Point from the death of Mrs. Law; and in not holding that Mrs. Mary D. Caldwell or her children should be liable for interest on the value of the seventy-seven acres aforesaid from the same time. 8. Because he erred in holding that the mortgage given by Mrs. Law to Phillips & Jackson is not a valid lien upon Stoney Point. 9. Because, after holding that said mortgage was invalid, he erred in not directing that the judgment of Phillips & Jackson *v.* Mrs. Law, which was included in the mortgage, should be paid out of the proceeds of Stoney Point.

We will first consider the eighth and ninth grounds of appeal, involving, as they do, the entire contention of J. P. Phillips, as survivor of Phillips & Jackson; and if we should find that his exceptions are not well taken, then J. P. Phillips has no further interest in the matters involved in the other grounds of appeal.

The complaint alleges that said Phillips is the holder of a judgment, which, on the record, appears to be unsatisfied, and upon which some seventy dollars is apparently due; and, also, that said Phillips holds a mortgage duly recorded upon which about $200 is apparently due, and that both are liens upon the lands sought to be partitioned; but in such complaint it is alleged that neither said judgment nor said mortgage are upon proper obligations or debts of Desdemona S. Law, deceased, but the same were given to secure the debts of her husband, Charles C. Law, and were not contracted for the benefit of, or on account of, any separate estate of the said Desdemona S. Law, deceased, though as now standing, such judgment and mortgage are clouds upon plaintiffs' title to said lands. In the answers of Phillips and Charles C. Law, these facts are denied.

It seems that the mortgage was given in 1884, and that Mrs. Law departed this life in December, 1887. The decree of the Circuit Judge disallowed both claims of Phillips as valid claims, and in discussing these claims, the Circuit Judge states: "The next question is that in relation to the Phillips & Jackson mortgage. There is no question as to the execution and deliv-

ery of the note and mortgage by Desdemona S. Law. There is, however, no testimony in regard to the consideration of this note and mortgage. The only witness examined with reference to these papers was J. P. Phillips, the survivor of the late firm of Phillips & Jackson. All he says is: 'All the credits are on the papers. I had no knowledge at the time I took these papers of any trust affecting the property. The mortgage includes the judgment that is set up in the complaint, and represents all that Mrs. Law owes me. It was given for full value.'" We have compared the statement made by the Circuit Judge of the testimony with the "Case," and find that he was strictly accurate in its reproduction.

We have shown by the pleadings that the plaintiffs tendered, and the defendants accepted, the issue that these debts did not have the necessary basis for their support as debts secured by lien on the property of Desdemona S. Law, deceased, to wit: that she being a married woman, and such debts being contracted subsequent to the year 1882, it was necessary that such debts should have been contracted with respect to her separate estate. Here there is not the slightest testimony in favor of Phillips' debts coming within this class. In other words, he has absolutely failed to successfully meet the issue he had accepted by his answer. Under such circumstances we are left no other course, under the repeated decisions of this court in regard to such issue, but to overrule these exceptions (8 and 9). *Taylor* v. *Barker*, 30 S. C., 242; *Chambers* v. *Bookman*, 32 *Id.*, 455; *Pelzer, Rodgers & Co.* v. *Durham*, 37 *Id.*, 354; *Habenicht* v. *Rawls*, 24 *Id.*, 461; *Aultman* v. *Rush*, 26 *Id.*, 517; *Gwynn* v. *Gwynn*, 27 *Id.*, 525.

It remains now to investigate the grounds of appeal presented in behalf of Charles C. Law. The first ground of appeal alleges that the Circuit Judge should have found as a fact that only $1,200, or at most $1,575, of the trust estate of Desdemona S. Law went into the purchase of the Stoney Point plantation of land, whereas he found as a fact that $1,875 of this trust estate was so invested. The appellant well knowing the great respect shown by this court to the findings of fact by the Circuit Judge, earnestly requests the court to scrutinize the

testimony closely for itself. We have done so, and with reluctance state that we see no ground upon which to base a conclusion at variance with that reached by the Circuit Judge. On all hands it is admitted that $1,200 of trust funds was so invested. The appellant admits that he paid $375 additional of trust funds, but claims that this $375, although paid by him of the trust funds, was really his own money, as the trust estate owed him that money. We, with the Circuit Judge, are not satisfied with his explanation. When it is considered that Mrs. Law received $2,500 of this trust estate, and, according to the testimony, paid $1,200 at one time on this purchase—paid himself $857.34—there was still left the sum of $442.66 in his hands. From this sum of $442.66, no doubt, this $375 was paid. This accounts for $1,575 of the purchase money of $5,000 paid for the land. The Circuit Judge found from the testimony that $300 additional was paid from the trust estate. He says in this connection: "He [C. C. Law] only claims that he advanced $3,500. This would leave [he means by subtracting $3,500+$1,200 from $5,000] a deficit of three hundred dollars of the purchase price of the plantation unaccounted for; and he does not undertake to show where this sum came from. As he had in his hands at the time moneys belonging to the trust estate, the presumption is conclusive that that sum was paid out of the trust funds in his hands." This exception is overruled.

The next exception, the second, alleges error in the Circuit Judge in finding that Charles C. Law only advanced $3,125 of the purchase money, and that his mortgage only secured that amount and interest, instead of $3,500 and interest from the death of Mrs. Law, which occurred 29th December, 1887. Charles C. Law claimed to have advanced $3,500 of the $5,000 paid for the land, and his wife gave him a mortgage on the land to secure this sum. But in considering the first exception, we have just held that $375 of the $3,500, claimed by him as paid of his own funds, was really of the trust estate. It necessarily follows that $3,125, and not $3,500, was the sum paid by him. This exception is overruled.

We will next consider the third, fourth, and fifth exceptions by Mr. Law. It must be borne in mind, in considering these

exceptions, that Mr. Law now has no interest in the trust estate of his wife, Desdemona S. Law, at her death; by his marriage settlement he shut himself off from any interest therein after her death. He and the offspring of himself and wife, Desdemona S., who are plaintiffs here, are at arm's length from each other. In other words, this is a family fight (always to be deplored), in which the children are on one side and the father on the other side. One of Mrs. Law's children, Mrs. Caldwell, received a deed from Mrs. Law in 1879 for seventy-seven acres of the Stoney Point plantation, in consideration of love and affection, upon the condition and limitation, amongst others, that she or her issue shall account for the gift of said land at a fair valuation as a part of her distributive share of her (Mrs. Law's) estate. Mrs. Law died *intestate.* This land having been conveyed to her as her absolute estate, was held by Mrs. Law freed from the control of any one, subject to the repayment of the trust funds invested in its purchase, and the payment to her husband, Charles C. Law, of the money he had loaned her, which was secured by her mortgage. The decree of Judge Izlar fixed these facts, and from them there is no appeal. It is very evident that there will remain nothing for partition of the proceeds of sale of this land. It cost $5,000. The trust estate is due therefrom $1,875, and interest from 29th December, 1887, and Charles C. Law is to receive nearly $4,200, with interest from 6th May, 1893. The place only realizes a rent of 1,000 pounds of lint cotton. So, therefore, from any standpoint as an heir at law of the estate of Mrs. Law, her husband, Charles C. Law, can hope for nothing from the proceeds of the sale after the payment of these debts. What interest can he have in the estate of his deceased wife as an heir at law, so far as the portion of the land, seventy-seven acres, conveyed by his wife to Mrs. Caldwell, is concerned? The very instrument he sets up, the mortgage from his wife to himself, by its very terms denies him any rights in the seventy-seven acres tract for the payment of his mortgage. "Exclusive of the amount of land given by me to my daughter, M. D. Caldwell," is its language. Mr. Law is not the guardian *ad litem* of any infant plaintiffs; he certainly does not represent any of the adult plaintiffs. He is

a volunteer, therefore, except as to his mortgage debt, in the questions suggested by these exceptions. These exceptions being alone presented by Mr. Law, and in no wise affecting his interests, as we have already seen, must be overruled.

We need only say as to the sixth exception, that our disposition of the first exception relieves us of the necessity of doing more than declaring it overruled.

The seventh exception complains that interest was allowed on the $1,875 of the trust estate invested in the lands from the death of Mrs. Law, 29th December, 1887, and that no interest was allowed on the value of the seventy-seven acres conveyed to Mrs. Caldwell from the same time. The Circuit Judge could not have held that the $1,875 bore interest during the lifetime of Mrs. Law, for by her deed in marriage settlement, the usufruct of the trust estate was reserved for her own use. By the same instrument, the usufruct was transferred, after her death, to her children. Such being the case, of course, this $1,875 bore interest from the date of her death. Now, as to whether the Circuit Judge should have required the heirs at law of Mrs. Caldwell to pay interest on the value of the seventy-seven acres of land in their possession from the death of Mrs. Law, we do not care to volunteer any opinion, as no such question is raised here by any one save a volunteer. Let this exception be overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.